LINDA CLAXTON, CA Bar No. 125729
linda.claxton@ogletree.com
LAURA E. HEYNE, CA Bar No. 279478
laura.heyne@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone:  213.239.9800
Facsimile:  213.239.9045

Attorneys for Defendant
REMINGTON LODGING & HOSPITALITY, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS CORONA and HORACIO VILLELA individually and on behalf of all similarly situated current and former employees,<br><br>Plaintiffs,<br><br>v.<br><br>REMINGTON LODGING & HOSPITALITY, LLC, and Does 1 through 20, inclusive; LUCY GRANADOS,<br><br>Defendants. | Case No. 17-5021<br><br>**DEFENDANT REMINGTON LODGING & HOSPITALITY, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>• Certificate of Interested Parties<br>• Notice of Related Cases<br>• Decl. of Jim Cowen<br>• Decl. of Elizabeth Lupercio<br>• Civil Cover Sheet<br><br>Complaint Filed: May 30, 2017<br>Trial Date:        None |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFFS JESUS CORONA AND HORACIO VILLELA AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant Remington Lodging & Hospitality, LLC ("Remington" or "Defendant"), hereby removes this matter from the Superior Court of the State of California for the County of Riverside to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 on the grounds that: (1) there is complete diversity of citizenship between Plaintiffs Jesus Corona ("Corona") and Horacio Villela ("Villela") (collectively, "Plaintiffs"), both citizens of the State of California, and Remington, a citizen of the States of Texas; (2) individually named Defendant Lucy Granados ("Granados") is a "sham defendant" and, therefore, her non-diverse citizenship must be disregarded in determining the diversity of citizenship requirement under Section 1332(a)(1); and (3) the amount in controversy exceeds the jurisdictional minimum for a class action of $5 million as set forth in Section 1332(d). The foregoing facts were true at the time the Complaint in this matter was filed and remain true as of the date of the filing of this notice of removal. Removal jurisdiction is therefore appropriate as detailed more fully below:

<u>**The State Court Action**</u>

1.     On or about May 30, 2017, Plaintiffs filed an unverified Complaint (the "Complaint") in the Superior Court of the State of California, County of Riverside, Case No. RIC1709686, captioned *Jesus Corona and Horacio Villela, individually, and on behalf of all similarly situated current and former employees vs. Remington Lodging & Hospitality, LLC, and DOES 1 through 20, inclusive; Lucy Granados* (the "Action").

2.     Plaintiffs' Complaint alleges the following seven (7) causes of action arising from Plaintiffs' employment with Remington: (1) Failure to Pay for all Hours Worked (Cal. Labor Code §§ 201, 202, 218.5); (2) Failure to Pay Overtime (Cal.

Labor Code §§ 510 and 1198); (3) Failure to Provide Meal Periods (Cal. Labor Code § § 226.7 and 512); (4) Failure to Provide Accurate Wage Statements (Cal. Labor Code §§ 226, 226.3); (5) Conversion (Civil Code § 3336); (6) Violation of California Business & Professions Code § 17200, et seq.; (7) Violations Pursuant to the Private Attorney General Act (Cal. Labor Code §§ 2698 et. seq.).

## Compliance with Statutory Requirements

3.    On June 7, 2017, Plaintiffs personally served Remington with the Complaint. *Declaration of Jim Cowen ("Cowen Decl.")* ¶ 2. Remington's removal is timely because Remington is removing this Action within 30 days of Plaintiffs' completion of service. 28 U.S.C. § 1446(b).

4.    In accordance with 28 U.S.C. § 1446(a), a true and correct copy of the Summons and Class Action Complaint, filed in the Superior Court on May 30, 2017, the Notice of Assignment to Department and Case Management Conference Order, the Civil Case Cover Sheet designating the matter as Complex, the Certificate of Counsel, and the Proof of Service of Summons, are attached hereto as **Exhibit A.** Remington is not aware of any other process, pleadings or orders served on it by Plaintiffs.

5.    Pursuant to 28 U.S.C. § 1446(d), Remington promptly will provide written notice of removal of the Action to Plaintiffs, through their attorneys of record, and will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, County of Riverside.

## Intradistrict Assignment

7.    Plaintiffs filed this Action in the Superior Court of California, County of Riverside; therefore, this case may properly be removed to the United States District Court for the Central District of California. 28 U.S.C. § 1441(a).    Intra-district assignment to the Riverside Division of this Court is proper because the case was originally filed in the California Superior Court in and for the County of Riverside.

## THE FEDERAL COURT'S JURISDICTION AND REMOVABILITY PURSUANT TO THE CLASS ACTION FAIRNESS ACT

8.      On February 18, 2005, the Class Action Fairness Act of 2005 ("CAFA") was enacted. In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds the sum or value of $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d)(2). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. While there are a number of exceptions to this rule of original jurisdiction contained in amended 28 U.S.C. §§ 1332(d)(3)-(5), none of them are applicable here.

9.      This Court has original jurisdiction over this case under CAFA in that it is a civil action filed as a class action wherein the matter in controversy exceeds the sum of $5 million, exclusive of interest and costs, and at least one member (if not all) of the class of plaintiffs is a citizen of a state different than Defendant Remington. *See* 28 U.S.C. § 1332(d).

### Complete Diversity Exists Between the Parties

10.     Plaintiffs expressly bring this action as class representatives "individually and on behalf of all similarly situated current and former employees" pursuant to "[California] Code of Civil Procedure section 382." Complaint ¶ 9. Therefore, CAFA applies. *See Bodner v. Oreck Direct, LLC,* No. C 0604756, 2006 WL 2925691, *3 (N.D. Cal. Oct. 12, 2006) (CAFA applies where "Plaintiffs' complaint alleges that the action is a class action, and recites the prerequisites to a class action under . . . California Code of Civil Procedure Section 382").

11.     Under 28 U.S.C. § 1453(b) of CAFA, "[a] class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except

that such action may be removed by any defendant without the consent of all defendants." CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants are citizens, when one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen, or when one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

12.    The putative class members include citizens of the State of California, including the two named Plaintiffs. Complaint, ¶¶ 3-4. An individual's citizenship is determined by his state of domicile. *Lew v. Moss,* 797 F.2d 747, 749 (9th Cir. 1986). An individual is domiciled in the state where he resides and intends to remain indefinitely. *Id.* Intent is measured objectively, based on factors including, among other things, current residence and place of employment or business. *Id.* at 750; *see, e.g., Rubio v. Roman Catholic Bishop of Sacramento,* No. CIV. S-07-0568 WBS GGH, 2007 WL 1576362, at *2-3 (E.D. Cal. May 31, 2007). An individual's domicile does not change until he establishes a new domicile by taking up residence in a new state, with the intent to remain there indefinitely. *Lew,* 797 F.2d at 750.

13.    Here, Plaintiffs allege that at all relevant times, they resided in the County of Riverside, California and that they worked for Remington at Date Restaurant at the Palm Springs Renaissance Hotel, located in Palm Springs, California. *See* Complaint ¶¶ 3-4. On this basis alone, the Court should find that Plaintiffs are domiciled in California, and thus California citizens. *See Lam Research Corp. v. Deshmukh,* 157 F. App'x 26, 27 (9th Cir. 2005) (defendant who lived and worked for plaintiff in Washington was presumptively a Washington citizen, despite his claim that he had changed his domicile from Washington to California).

14.    Additionally, Plaintiffs seek to represent a class consisting of all "similarly situated" current and former employees of Remington's Date Restaurant at the Palm Springs Renaissance Hotel (located in Palm Springs California) since four years preceding the filing of the Complaint. *See* Complaint ¶ 10. This putative

4                                                    Case No. 17-5021

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

class logically includes other California citizens as well.

15.    Remington is not a citizen of California, but rather a citizen of Texas. "The citizenship of an LLC for purposes of the diversity jurisdiction… has the citizenships of all of its members." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *see also Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006) ("the citizenship of a limited liability company is determined by the citizenship of all of its members"); *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125–126 (1st Cir. 2011); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F. 3d 1020, 1022 (11th Cir. 2004).

16.    Remington was, at the time of the filing of this Action, and remains, a Delaware limited liability company with its headquarters located in Dallas, Texas. *Cowen Decl.* ¶ 3.

17.    Remington consists of one member – Remington Holdings L.P ("Remington Holdings"). Remington Holdings was, at the time of the filing of this action, and remains, a Delaware limited partnership. The general partner of Remington Holdings is Remington Holdings GP, LLC, and the limited partners are Archie Bennett, Jr., and Montgomery Bennett. *Cowen Decl.* ¶ 4.

18.    Archie Bennett Jr. is a resident and citizen of Texas. *Cowen Decl.* ¶ 5.

19.    Monty J. Bennett is a resident and citizen of Texas. *Cowen Decl.* ¶ 6.

20.    Remington Holdings GP, LLC was, at the time of the filing of this action and remains, a limited liability company, organized in the state of Delaware, with its headquarters in Dallas, Texas. *Cowen Decl.* ¶ 7. Remington Holdings GP, LLC consists of two members – Archie Bennett Jr. and Monty J. Bennett. As stated above, both are residents and citizens of Texas. *Cowen Decl.* ¶ 7. Accordingly, all members of Remington are citizens of Texas, rendering Remington a citizen of Texas.

21.    Based upon the foregoing, minimal diversity is established because the

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

named Plaintiffs are citizens of California and Remington is a citizen of Texas.

22.    As discussed below, there are no other defendants whose consent or joinder are required for removal as defendant Lucy Granados is a "sham defendant" whose non-diverse citizenship must be disregarded for removal purposes.

**Granados is a "Sham Defendant" Whose Non-Diverse Citizenship Must be Disregarded for Removal Purposes**

23.    Although the face of Plaintiffs' Complaint names Granados as an individual defendant, the allegations against Granados, a supervisor employed by Remington, clearly demonstrate that she is a "sham defendant," whom Plaintiffs fraudulently joined in this action merely to prevent diversity jurisdiction.

24.    A non-diverse defendant who has been fraudulently joined cannot serve to defeat removal based on diversity between the proper parties. *Morris v. Princess Cruises, Inc.* 236 F.3d 1061, 1067 (9th Cir. 2001). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *see also Zogbi v. Federated Dept. Store*, 767 F. Supp. 1037, 1041 (C.D. Cal. 1991). Such fraudulently joined "sham defendants" are disregarded for purposes of subject matter jurisdiction, and the Court's exercise of diversity jurisdiction is proper. *McCabe*, 811 F.2d at 1339 (individual defendants in suit for, *inter alia*, wrongful termination and intentional infliction of emotional distress were fraudulently joined and did not prevent removal); *Zogbi*, 767 F. Supp. at 1041 (individual employees were sham defendants whose presence did not destroy diversity).

25.    When determining whether a defendant is fraudulently joined, "[t]he court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979) ("[I]t is well settled that upon allegations of fraudulent joinder ... federal courts may look beyond the pleadings to determine if the joinder ... is a sham or

fraudulent device to prevent removal."), *aff'd,* 710 F.2d 549 (9th Cir. 1983); *McCabe*, 811 F.2d at 1339 (a defendant "is entitled to present the facts showing the joinder to be fraudulent").

26.    Here, Plaintiffs' Complaint alleges the following wage hour violations jointly against Granados and Remington: (1) Second Cause of Action for "Failure to Pay Overtime Compensation (Cal. Labor Code §§510, 1194)" (including a request for waiting time penalties (Cal. Labor Code § 203); (2) Third Cause of Action for "Failure to Provide Meal Periods (Cal. Labor Code §§ 226.7, 512)"; and (3) Seventh Cause of Action for "Violations of the Private Attorneys General Act (Cal. Labor Code § 2698)."

27.    With respect to the Second and Third Causes of Action alleged against Granados, Plaintiffs make a conclusory allegation, without a single fact to support it, that Granados was "a **managing agent** and supervisor employee of Defendant Remington" and that she can be held individually liable for Labor Code violations pursuant Cal. Labor Code § 558.1.  See, Complaint ¶¶ 6, 28, 33.  Plaintiffs are incorrect.

28.    Cal. Labor Code § 558.1 imposes liability on individual defendants for Labor Code violations when the individual defendant is an "employer" or "other person acting on behalf of an employer."  Cal. Labor Code § 558.1.   In pertinent part, Cal. Labor Code § 558.1 defines "other person acting on behalf of an employer" as "an owner, director, officer, **or managing agent** of the employer."  Cal.  Labor Code § 558.1, *emphasis added*.  The position of a mere supervisor does not suffice; thus, the viability of Granados alleged liability rests on whether she is a managing agent. The determination of whether an employee acted as a managing agent does not hinge simply on his level in the corporate hierarchy; the crux of the inquiry is the degree of discretion the employee possessed in making decisions that would **ultimately determine corporate policy**.  *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 823-24 (1979).  In *Roby v. McKesson Corp.*, 47 Cal.4[th] 686, 715 (2009),

the California Supreme Court explained that a managing agent must have "discretionary authority over… formal policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership." Even with the authority to hire or fire employees, a supervisor or manager is still not a "managing agent." See, *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 575 (1999).

29.    Here, it is undisputed that Granados was not an owner, director, or officer of Remington, but rather a Banquet Manager within the Palm Springs Renaissance Hotel (the "Hotel"). *Declaration of Elizabeth Lupercio ("Lupercio Decl*.), ¶ 9.  Her duties as a Banquet Manager consisted of organizing the banquet staff for events, interfacing with the guests and supervising the specific special event within the restaurant. Outside of the special events, she would hold staff meetings with her staff to prepare them for upcoming events, assist in planning the events and participate in department meetings. *Id.*

30.    Granados reported to the Hotel's Food & Beverage Director, who reported to the Hotel's General Manager, who, in turn, reported to the Division Vice President of Remington Hotels, LLC.  *Lupercio Decl,.* ¶ 9.

31.    Granados did not have responsibilities in setting policies and procedures for Remington.  *Lupercio Decl,.* ¶ 10.  Remington's policies are set at the corporate level and administered at the Hotel level. However, as a Banquet Manager, **Granados did not have even the authority to implement that policy**. *Id.*  That authority resided with the General Manager and Human Resources department. **Granados also did not have the authority to hire, fire or discipline employees**. *Id.*  The authority to hire employees lies with the Human Resources Department and the General Manager.  *Id.*  The termination process is prescribed at the Remington corporate level, which is administered the Hotel's Human Resources Department. The actual termination decision is made by Remington's corporate Vice President of Field Human Resources. **Granados did not have the authority to even**

30351810_4.docx

**recommend termination of an employee.** *Id.* While Granados could recommend discipline, the disciplinary process is set by Remington at a corporate level and the approval for discipline is made by the Hotel Human Resources department. *Id.* Granados did not have any control or input in setting wages. Wages are again set at the corporate level and that policy is administered by Hotel Human Resources. *Id.* As such, Granados was not a "managing agent" and cannot be held liable as an individual defendant.

32.    Moreover, Plaintiffs' PAGA claims against Granados individually for penalties pursuant to Cal. Labor Code § 558 and 1197.1 cannot possibly succeed as Granados is neither an owner of Remington, a corporate agent of Remington, nor is she a controlling member of Remington. *Lupercio Decl,.* ¶ 9. Courts reviewing claims for civil penalties against individual defendants by way of PAGA have permitted actions to proceed against individual defendants only where those defendants were owners, officers, or corporate agents of the plaintiffs' employers. *See, e.g., Martinez v. Antique & Salvage Liquidators, Inc*., No.C09-00997, 2011 U.S. Dist. LEXIS 19198, 4-6 (N.D. Cal. February 25, 2011) ( order modifying grant of summary judgment finding that only an individual owner of a company could be liable under PAGA for violation of Cal. Labor Code section 558.); *Helm v. Alderwoods Group, Inc.*, 696 F. Supp. 2d 1057, 1074 (N.D. Cal. 2009) (individual corporate officers may be personally liable under section 558); *Ochoa-Hernandez v. Cjaders Foods, Inc*., No. C08-02073, 2009 U.S. Dist. LEXIS 42481 (N.D. Cal. 2009) (on motion for leave to file amended complaint, court permitted amended complaint adding individuals who owned and controlled employer for PAGA cause of action by way of section 558); *Ontiveros v. Zamora*, 2009 U.S. Dist. LEXIS 13073 (E.D. Cal. 2009) (finding on motion for judgment on the pleadings that allegation that owner of company caused Labor Code violations was adequate for section 558). As Granados is not an owner, officer, or corporate agent, she is not subject to individual liability under PAGA.

33.    Accordingly, Granados is a "sham defendant" whose non-diverse citizenship must be disregarded for purposes of removal jurisdiction. *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1136-37 (S.D. Cal. 1998) (dismissing claims against non-diverse individual defendants where defendants were named in complaint caption and headings but "no material allegations against these defendants are made").

## Amount in Controversy

34.    Section 28 U.S.C. § 1332(d) of CAFA authorizes the removal of class action cases in which, among other factors mentioned above, the amount in controversy for all class members exceeds $5 million. Plaintiffs' Complaint is silent as to the total amount of monetary relief sought. However, the failure of the Complaint to specify the total amount of monetary relief sought by Plaintiffs does not deprive this Court of jurisdiction. *White v. J.C. Penny Life Ins. Co.*, 861 F. Supp. 25, 26 (S.D. W.Va. 1994) (defendant may remove suit to federal court notwithstanding the failure of Plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any plaintiff could avoid removal simply by declining . . . to place a specific value claim upon its claim."). Defendant need only establish by a preponderance of the evidence that Plaintiff's claim exceeds the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

35.    While Remington denies the validity of Plaintiffs' claims and request for relief, Plaintiffs' claimed damages are in excess of the jurisdictional minimum as fully detailed below. *See Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir. 1999) (finding that facts presented in notice of removal, combined with plaintiff's allegations, sufficient to support finding of jurisdiction); *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1412 (5th Cir. 1995) (stating that "defendant can show by a preponderance of the evidence that the amount in controversy is greater than the

jurisdictional amount"); *accord Gaus v. Miles, Inc.,* 980 F.2d 564, 566-67 (9th Cir. 1992); *White v. FCI USA, Inc.,* 319 F.3d 672, 674 (5th Cir. 2003) (facially apparent from the lengthy list of damages, combined with a claim for attorney's fees, that plaintiff's claim exceeded the jurisdictional threshold).

36.    **Number of putative class members.**  Although Plaintiffs' Complaint does not allege specifics as to the number of persons who meet the class definition, it does allege the class members are so numerous that joinder of all class members is impracticable. Complaint ¶ 12.  Plaintiffs have alleged the class of persons includes "current and former employees of the Date Restaurant at the Palm Springs Renaissance Hotel…**holding the positions of bus persons, waiters, bartenders, banquet workers, servers, hostesses, food runners, cooks and dish washers (and others with similar job titles and duties)** at any time within four years prior to the filing of this action, up to the time that class certification is granted." Complaint ¶ 10.

37.    Remington has reviewed its records of all hourly and non-exempt "current and former employees for the Date Restaurant at the Palm Springs Renaissance Hotel, in Palm Springs, California holding the positions of bus persons, waiters, bartenders, banquet workers, servers, hostesses, food runners, cooks and dish washers (and others with similar job titles and duties)" during the time period from May 30, 2013 to July 6, 2017, and determined that the putative class includes at least 264 persons. *Lupercio Decl.*, ¶¶ 3-4.  As such CAFA's exception for classes of fewer than 100 persons does not apply. *See* 28 U.S.C. § 1332(d)(5)(B).

38.    **Unpaid Off the Clock Wages.**  For Plaintiffs' First Cause of Action, Plaintiffs claim that Remington failed to pay class members wages for all hours worked, including unpaid off the clock wages. *See* Complaint ¶¶ 22-25.  Plaintiffs have alleged that Remington engaged in unpaid off the clock time "during the four years preceding the filing of this action" and as a result of "a uniform policy" against class members. Complaint ¶ 17. Plaintiffs have asserted a UCL claim for

restitution with respect to the unpaid off the clock time, rendering a four year applicable statute of limitations to Plaintiffs' claims. Complaint ¶ 53. *See,* Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Products Co*., 23 Cal.4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

39.     Remington has collected records relating to the purported putative class members and those records show that the 264 putative class members worked approximately 19,078 workweeks during the class period, and earned roughly $11.17 per hour on average. *Lupercio Decl*., ¶¶ 4-5. While Plaintiffs do not allege how many hours of overtime Remington's employees worked but were not compensated for, for purposes of establishing removal jurisdiction, it is reasonable to assume an average of at least one or two hours of unpaid time each week for each class member during the relevant time period. In *Oda v. Gucci Am., Inc.,* No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015), the court found it was reasonable, for purposes of establishing removal jurisdiction, to assume each class member worked at least one hour of overtime they were not compensated for based on the plaintiff's allegation that the defendant "sometimes" failed to pay overtime. Here, Plaintiffs allege that Remington failed to compensate for off the clock time on a "uniform basis," it is more than reasonable to assume a violation rate of at least two hours per week.

40.     Based on this assumption, the putative class size, and an average hourly wage rate of the putative class members of $11.17 per hour, the amount in controversy for the off the clock claim is **$426,203**.  This figure is calculated as follows: $11.17 (average hourly wage rate per hour) X 2 hours (number of off the clock hours per week) X 19,078 (total number of weeks for which the entire putative class was employed).

41.    Plaintiffs also alleges that they are entitled to Cal. Labor Code Section 1197.1 penalties, including liquidated damages in the same amount as the unpaid minimum wages and a penalty of $100.00 for the initial failure to timely pay wages and $250.00 for each subsequent failure. Complaint ¶ 64; Prayer at ¶ 9.  Penalties pursuant to Cal. Labor Code Section 1197.1 total **$1,008,153**, calculated as follows: Liquidated Damages Claim: **$426,203** (in the same amount of the unpaid minimum wage).  Penalties Claim: **$581,950** (violations based on one-year limitations period, 122 employees, and 2,401 bi-weekly pay periods, see *Lupercio Decl.,* ¶¶ 3-7): $12,200 (122 initial violations X $100) + $569,750 (2,279 subsequent violations x $250) = $581,950. See *Jassov. Money Mart Exp., Inc.,* No. 11-CV-5500 YGR, 2012 WL 699465, at *5, n.5 (calculating Section 1197.1 penalties in this manner).

42.    **Unpaid Overtime Wages.**  For Plaintiffs' Second Cause of Action, Plaintiffs claim that Remington failed to pay class members overtime wages in excess of eight hours in a workday and/or forty (40) in a workweek. Complaint, ¶¶ 26-28.  Indeed, Plaintiffs allege that they and other class members were "non-exempt" employees that were required to work overtime (beyond 8 hours per day or 40 days per week) without receiving overtime compensation. Complaint ¶ 27. As with the Plaintiffs' unpaid off the clock wages claim, Plaintiffs alleged that Remington engaged in unpaid overtime "during the four years preceding the filing of this action" and as a result of "a uniform policy" against class members. Complaint ¶ 17.  Plaintiffs have asserted a UCL claim for restitution with respect to the unpaid overtime rendering a four year applicable statute of limitations to Plaintiffs' claims.

43.    Because overtime is compensated at a time-and-a-half rate, an employee earning $11.17 per hour would be compensated $16.76 for each overtime hour worked. *See* Cal. Lab. Code § 510.

44.    Plaintiffs have not alleged the amount of unpaid overtime they are seeking in the Complaint.  Accordingly, for the purpose of this removal calculation,

Remington again conservatively assumes the each putative class members worked two hours of overtime per week, for which they failed to receive premium overtime wages.   Based on this assumption, the putative class size, and an average hourly overtime wage rate of the putative class members of $16.76 per hour, the amount in controversy for the overtime claim is **$639,304**.  This figure is calculated as follows: $16.76 (overtime premium wage rate based on average hourly wage of $11.17 per hour) X 2 hours (number of overtime hours per week) X 19,078 (total number of weeks for which the entire putative class was employed).

45.   **Waiting Time Penalties.**   Plaintiffs allege that Remington owes penalties for having failed to pay all wages to employees upon the end of their employment, as required by Section 203 of the California Labor Code. *See* Complaint ¶ 25.  Under Section 203, former employees whom an employer willfully denied wages may recover penalties in the amount of their daily rate of pay for a period of up to thirty days. *See* Cal. Lab. Code § 203. This claim is derivative of Plaintiffs' unpaid wage claims *(see* Complaint ¶ 25) which, as described above, are based on alleged "uniform policies" and practices of Remington. Thus, under Plaintiffs' theory, all hourly and non-exempt California employees were paid less than they are owed, and therefore all of these individuals who are former employees are owed Section 203 penalties. *See Altamirano v. Shaw Indus., Inc.,* No. C-13-0939 EMC, 2013 WL 2950600, at *12 (N.D. Cal. June 14, 2013) (where plaintiff alleges pervasive violations, "it is reasonable to assume that each employee leaving employment would" be owed Section 203 penalties); *Helm,* 2008 WL 2002511, at *5 (holding same).  Waiting time penalties have a three year statute of limitation period.

46.   Of the 264 individuals who worked as hourly and non-exempt employees for Remington since May 30, 2013, approximately 145 were no longer employed with the company within three years prior to the filing of the Complaint on May 30, 2017. *Lupercio Decl., ¶ 6.* Thus, Plaintiffs' putative class potentially includes 145 individuals who could recover Section 203 penalties. These individuals;

daily rate of pay was $89.76 ($11.22 X 8 hours).  *Id.* Accordingly, a 30-day penalty would be at least **$390,456** ($89.76 X 30 maximum days of penalty pay) X 145 terminated employees).

47.    **Unpaid Meal Premium.**    For Plaintiffs' Third Cause of Action, Plaintiffs claims that Remington failed to provide class members with required meal breaks.  Complaint ¶¶ 30-31.  Plaintiffs seek a premium in the amount of one hour of pay for each workday that a meal period was not provided.  *Id.*  As with the Plaintiffs' other wage claims, Plaintiffs alleged that Remington engaged in break violations "during the four years preceding the filing of this action" and as a result of "a uniform policy" against class members. Complaint ¶ 17.   Plaintiffs have asserted a UCL claim for restitution with respect to the purported overtime violations seeking a four year applicable statute of limitations to Plaintiffs' meal break claims.

48.    Based on a review of Remington's business records, 264 putative class members worked approximately 19,078 work weeks during the four-year period from May 30, 2013 to the present, and received an average base hourly rate of $11.17.  *Lupercio Decl,. ¶ 5.*

49.    On that basis, Remington can reasonably assume that each of the putative class members will claim to have not been provided and paid for at least one compliant meal break for each calendar day they worked during the four-year period prior to the filing of the Complaint.  *See, e.g., Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK, 2015 WL 2452755, *4 (C.D. Cal. May 21, 2015) (King, J.) (holding that a 100% violation rate was properly utilized where the plaintiff's complaint did "not contain any allegations that suggest a 100% violate rate is an impermissible assumption"). This results in an amount in controversy of **$1,065,506.** (5 hours X 19,078 work weeks) X $11.17 (average hourly wage).

50.    **Failure to Provide Accurate Wage Statements.**    For their Fourth Cause of Action, Plaintiffs allege that Remington violated Labor Code Section 226 by providing "false and inaccurate" wage statements. Complaint ¶¶ 35 - 39.  Section

226 provides for a penalty of at least $50 for the initial pay period in which a violation occurs and at least $100 per employee for each violation in a subsequent pay period, with a maximum aggregate penalty of $4,000 per employee. *See* Cal. Lab. Code § 226(e). Such claims under Section 226 are subject to a one-year limitation period, which in this case is May 30, 2016 to the present. Cal. Code Civ. Proc. § 340. "Actual damages" incurred by members of the putative class is not presently known. As such, Remington calculates the amount in controversy based on the per-pay-period penalty amounts set forth in Cal. Lab. Code § 226(e).

51.     The class of employees Plaintiffs claims is entitled to penalties under Section 226 includes 122 individuals who worked as non-exempt employees since May 30, 2016. *Lupercio Decl., ¶* 7. Because Remington pays its employees bi-weekly, it issued 2,401 wage statements during this period. *Ibid.*

52.     Plaintiffs allege a "uniform policy" of providing deficient wage statements. *See* Complaint ¶ 17. Thus, under Plaintiffs' theory, all wage statements within the 1 year statute of limitations were deficient and the amount in controversy for this claim is **$581,950** ((122 initial violations X $50) + (2,279 secondary violations (initial violations) X $100)). *See Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-cv-00222-JSC, 2014 WL 2199645, at *8 (N.D. Cal. May 27, 2014) (calculating wage statement penalties accordingly); *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205-06 (E.D. Cal. 2008) (court may assume maximum penalty consistent with plaintiff's allegations for purposes of amount in controversy).

53.     **PAGA Penalties**. Plaintiffs' Seventh Cause of Action seeks penalties pursuant to the Private Attorney General's Act ("PAGA") for failure to properly record and pay putative class members employed during the year prior to filing of the Complaint[1]  for all hours and overtime hours worked, failure to provide them

---

[1] The Complaint seeks PAGA penalties on "behalf of all class members." Complaint ¶ 60.

30351810_4.docx

with accurate wage statements, and failure to pay wages within the time required by law. Complaint ¶¶ 62-64. Plaintiffs further seeks "**all civil penalties**….and/or as otherwise provided for statute, for which defendants are liable as a result of their violations of the above-mentioned Labor Code section" Complaint ¶ 64.

54. PAGA allows a private citizen to pursue civil penalties on behalf of the State of California Labor and Workforce Development Agency ("LWDA") provided that formal notice and waiting procedures of the law are followed. Cal. Lab. Code § 2698, et seq. An aggrieved employee is deputized to act as a Private Attorney General if he first informs the LWDA of the alleged violations and the LWDA does not pursue the allegations or does not issue a citation within certain time periods. Cal. Lab. Code § 2698, et seq. As a Private Attorney General, the aggrieved employee is allowed to seek civil penalties not only for violations that the employee personally suffered but also for violations of "other current or former employees." Cal. Lab. Code § 2698, et seq. The applicable statute of limitations to recover penalties under PAGA is one year. Cal. Lab. Code § 340.

55. For those provisions of the Cal. Labor Code that contain no penalty, PAGA's catchall provision authorizes the recovery of $100 for each employee per pay period for an "initial" violation and $200 for each employee per pay period for each "subsequent" violation. Cal. Lab. Code § 2699(f)(2).

56. The Complaint alleges that the unlawful activities alleged therein violated a number of different provisions of the Labor Code (Complaint ¶ 64) and seeks "to recover all civil penalties… for which defendants are liable as a result of their violations of the above-mentioned Labor Code sections." ¶ 64. PAGA penalties for Plaintiff's alleged Labor Code Sections 204, 226.3 and 558 (for semi-monthly payment violations under Section 210, wage statement violations and meal period violations) total **$1,404,000.** This is calculated as follows, based on 122 one year class members and 2,401 wage statements issued during that period: [122 X $100] + [(2,401 – 122) x $200], which amounts to **$468,000**/claim X 3 claims.

30351810_4.docx

PAGA penalties for Plaintiffs' claim under Labor Code Section 558 for overtime violations totals **$234,000**, based on $50 for first pay period in which a violation occurred and $100 for each subsequent pay period, for the same one year class discussed above. [122 X $50] + [(2,401 – 122) x $100]. The PAGA penalty under Labor Code Section 2699 for the alleged waiting time violation under Section 203 is **$4,600** (46 terminated class members X $100).

57. **Summary of Damages.** The total amount in controversy based on above paragraphs is approximately **$4,938,221.**

| Damages | Amount |
|---|---|
| Unpaid Off-The-Clock and Penalties | $426,203 |
| Unpaid Overtime | $639,304 |
| Waiting Time Penalties | $390,456 |
| Unpaid Meal Premiums | $1,065,506 |
| Wage Statement Penalties | $234,000 |
| PAGA Penalties | $1,756,550[2] |
| **Total** | **$4,938,221** |

58. Finally, if successful, Plaintiffs are expected to seek statutory attorneys' fees in connection with their claims. *See* generally Complaint and Prayer for Relief. Although Remington denies that Plaintiffs are entitled to any attorneys' fees, where attorneys' fees and costs are provided by statute, the amount of those fees likely to be incurred is also included in the amount in controversy for purposes of diversity jurisdiction. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). In similar cases, to determine the amount in controversy, courts "assume plaintiffs are

[2] This includes the $581,950 amount for 1197.1 penalties discussed in Paragraph 41.

30351810_4.docx

1    entitled to attorney fees valued at approximately 25%" of the projected damages."
2    *Ford v. CEC Entm't, Inc.*, No. CV 14- 01420 RS, 2014 WL 3377990, at *6 (N.D.
3    Cal. July 10, 2014) (assuming 25 percent attorneys' fee in representative action); *see*
4    also *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-cv-00222-JSC,
5    2014 WL 2199645, at *6 (N.D. Cal. May 27, 2014); *see generally Hanlon v.*
6    *Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (under the "common fund"
7    approach, the "benchmark award for attorney fees" is 25  percent of the recovery).

8    59.    Based on the damage calculations above **excluding the estimated**
9    **PAGA penalties**, in the amount of $3,181,671 (4,938,221-$1,756,550), the potential
10   attorneys' fees - 25 percent of that amount—comprise an additional **$795,418**, for
11   purposes of the amount in controversy, for a total of **$5,733,639**. If attorneys' fees
12   are calculated on the potential PAGA penalties at the same rate, that would add an
13   additional **$439,138** to the amount in controversy for a total of **$6,172,777**.

14   60.    In sum, Remington has established by a preponderance of the evidence
15   that the amount-in-controversy more likely than not exceeds the $5 million
16   jurisdictional minimum for CAFA removal.  Because these estimates do not account
17   for disgorgement of profits, punitive damages or pre-judgment interest, all of which
18   are requested in the Complaint, the actual amount-in controversy can reasonably be
19   assumed to be even more

20   61.    There are no grounds that would justify this Court in declining to
21   exercise its jurisdiction pursuant to 28 U.S.C. § 1332(d)(3) or require it to decline to
22   exercise jurisdiction pursuant to 28 U.S.C. § 1332(d)(4).

23              **NOTICE AND SERVICE REQUIREMENTS ARE MET**

24   62.    As required by 28 U.S.C. §1446(b), the original Notice was filed within
25   30 days after Remington was first served with a copy of Plaintiffs' Summons and
26   Complaint. Remington removes based on its own information because the Complaint
27   does not state on its face the amount in controversy.

28   63.    As required by 28 U.S.C. §1446(d), Remington provided notice of this

removal to Plaintiffs through their attorneys of record.

64.    As required by 28 U.S.C. §1446(d), a copy of the original Notice of Removal will be filed with the Superior Court of the State of California, in and for the County of Riverside.

65.    In the event this Court has a question regarding the propriety of this Notice of Removal, Remington requests that it issue an Order to Show Cause so that it may have an opportunity to more fully brief the basis for this removal.

WHEREFORE, Remington removes the above-action to this Court.


DATED: July 7, 2017                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.



By: /s/ Linda Claxton
    Linda Claxton
    Laura E. Heyne

Attorneys for Defendant
REMINGTON LODGING &
HOSPITALITY, LLC