UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-1371 JGB (SPx)** | Date | April 22, 2019 |
| Title | *Jesus Corona, et al. v. Remington Lodging and Hospitality, LLC, et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 42); and (2) GRANTING Plaintiff's Motion for Attorneys' Fees and Class Representative Awards (Dkt. No. 42-1)

On March 18, 2019, Plaintiffs Jesus Corona and Horacio Villela ("Plaintiffs") filed a Motion for Final Approval of Class Action Settlement ("MFA," Dkt. No. 42) and a Motion for Attorneys' Fees and Class Representative Awards ("MAF," Dkt. No. 42-1.) These matters are unopposed. The Court held a hearing on these matters on April 15, 2019. Upon consideration of the papers filed in support of these Motions, as well as oral arguments presented by the parties, the Court GRANTS Plaintiffs' MFA and MAF.

## I. BACKGROUND

On August 4, 2017, Plaintiffs filed a First Amended Complaint against Defendant Remington Lodging and Hospitality, LLC ("Defendant" or "Remington") and John Ault. ("FAC," Dkt. No. 22.) Plaintiffs allege seven causes of action: (1) failure to pay wages for all hours worked (Cal. Lab. Code §§ 201, 202, 218.5); (2) failure to pay overtime compensation for all overtime hours worked (Cal. Lab. Code §§ 510, 1194); (3) failure to provide meal periods (Cal. Lab. Code §§ 226.7, 512); (4) failure to provide accurate wage statements (Cal. Lab. Code §§ 226, 226.3); (5) conversion (Cal. Civ. Code § 3336); (6) violations of Cal. Bus. & Prof. Code § 17200 et seq.; and (7) violations under the Private Attorney General Act ("PAGA") (Cal. Lab. Code § 2698 et seq. (Id.) On October 4, 2017, the parties stipulated to dismiss Defendant John Ault. (Dkt. No. 29.)

On November 27, 2018, the Court granted preliminary approval of this class action settlement and granted conditional certification of the proposed settlement class. ("Preliminary Approval Order," Dkt. No. 39.) In the Preliminary Approval Order, the Court ordered:

1. The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate for members of the Settlement Class.

2. The following Settlement Class is certified for settlement purposes only: all current and former hourly-paid or non-exempt California employees of Remington, who were employed in the Banquet Department of the Renaissance Palm Springs Hotel during the Class Period.

3. The Court appoints James W. Johnston and Larry R. Hoddick as counsel on behalf of the Settlement Class for purposes of settlement only.

4. Plaintiffs Jesus Corona and Horacio Villela are appointed as the representatives of the Settlement Class for purposes of settlement only.

5. The Court appoints Simpluris, Inc. as the settlement administrator.

6. The Notice of Class Action Settlement is approved.

7. The Court authorizes mailing of Notice to the settlement class members by first-class United States pursuant to the Settlement Agreement.

8. The hearing date for the Final Fairness Hearing is hereby set for April 15, 2019 at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division located at 3470 12th Street, Riverside, California 92501.

(Id. at 18.) On March 18, 2019, Plaintiffs filed these Motions. In support of the Motions, Plaintiff submitted the following documents:

- Declaration of James W. Johnston ("Johnston Decl.," Dkt. No. 42-2);
- Settlement Agreement ("Settlement Agreement," Dkt. No. 42-2, Ex. A);
- Johnston Fees Summary ("Johnston Fees," Dkt. No. 42-2, Ex. B);
- Johnston Costs Summary ("Johnston Costs," Dkt. No. 42-2, Ex. C);
- Proof of Filing with California's Labor and Workforce Development Agency ("LWDA Filing," Dkt. No. 42-2, Ex. D);
- Jesus Corona's Consent to Distribution of Attorney Fees ("Corona Attorneys' Fees Consent," Dkt. No. 42-2, Ex. E);
- Horacio Villela's Consent to Distribution of Attorney Fees ("Villela Attorneys' Fees Consent," Dkt. No. 42-2, Ex. F);
- Declaration of Larry R. Hoddick ("Hoddick Decl.," Dkt. No. 42-3);

- Hoddick Fees Summary ("Hoddick Fees," Dkt. No. 42-3, Ex. A);
- Hoddick Costs Summary ("Hoddick Costs," Dkt. No. 42-3, Ex. B);
- Declaration of Jesus Corona ("Corona Decl.," Dkt. No. 42-4);
- Declaration of Horacio Villela ("Villela Decl.," Dkt. No. 42-5);
- Declaration of Mary Butler ("Butler Decl.," Dkt. No. 42-6);
- Exemplar Notice ("Notice," Dkt. No. 42-6, Ex. A).

Defendant did not file oppositions to either of the Motions. On April 15, 2019, the Court held a hearing.

## II. THE SETTLEMENT AGREEMENT

The Court preliminarily approved the Settlement Agreement on November 27, 2018. The terms of the Settlement Agreement are discussed below.

### A. Settlement Class

The settlement class for the purposes of the settlement of this case includes "all current and former hourly-paid or non-exempt California employees of [Remington], who were employed in the Banquet Department of the Renaissance Palm Springs Hotel during the Class Period." (Settlement Agreement I.F.) The final class list consists of 87 individuals. (Butler Decl. ¶ 8.) Class members are not required to submit claim forms, and all who do not request exclusion participate in the settlement. (Settlement Agreement V.E.)

### B. Financial Terms

Below is an overview of the financial terms for which Plaintiffs seek the Court's approval:

- Gross settlement amount: $180,000[1]
- Attorneys' Fees: $60,000
- Litigation costs: $8,609.42[2]
- Settlement administration costs: $6,000[3]
- Service award to class representatives: $10,000
- PAGA Payment to the LWDA: $3,750
- Net Settlement Amount: $91,640.58

---

[1] This sum does not include Employer Payroll Taxes for the portion of the settlement payments considered to be wages. (Settlement Agreement I.II.) Defendant will pay these payroll taxes separately and in addition to the gross settlement amount. (Id.)

[2] This is $3,390.58 less than the $12,000 permitted in the Settlement Agreement. (Settlement Agreement V.D.)

[3] This is $4,000 less than the $10,000 permitted in the Settlement Agreement. (Settlement Agreement III.D.)

The Settlement Agreement is non-reversionary. (Settlement Agreement V.E, V.J.1.) Undeliverable checks or checks not cashed within 180 days of issuance will be cancelled. (Id. V.J.1.) Funds associated with the cancelled checks will be tendered to Legal Aid at Work. (Id.)

### 1. Settlement Class Members

Each class member is be eligible to receive payment and is not be required to submit a claim form to receive payment. (Id. V.E.) Each class member will automatically be issued payment as long as they do not timely and validly request exclusion. (Id.) The portion of the net settlement amount payable to each class participant is calculated as follows:

> The Individual Settlement Share that each Settlement Class Member is eligible to receive will be calculated by the Settlement Administrator by dividing each Class Member's Individual Workweeks by the Total Workweeks, which will produce an "Individual Payment Ratio." Each Settlement Class Member's Individual Payment Ratio is then multiplied by the Net Settlement Amount to yield his or her Individual Settlement Share.
>
> Twenty Percent (20%) of each Individual Settlement Share will be treated as payment of wages and will be subject to IRS Form W-2 reporting. Individual Settlement Shares are subject to reduction for applicable employee's share of taxes and withholdings with respect to the wage-portion of his or her Individual Settlement Share. Eighty Percent (80%) of the Individual Settlement Share will be treated as payment of penalties. Settlement Class Members will be issued an IRS Form 1099 for the interest and penalties portion of their Individual Settlement Share, and no taxes will be withheld . . . from these portions.

(Id.) The average payment amount per class member is approximately $1,053.34, with the highest estimated payment being $4,158.89. (Butler Decl. ¶ 11.)

### 2. Class Representatives

The Settlement Agreement provides for a $5,000 service award to each Corona and Villela. (Settlement Agreement V.C.) The Settlement Agreement provides that Defendant shall submit a statement of non-opposition to this request. (Id.) The Court has not yet received this statement, but at the April 15, 2019 hearing, Defendant expressed its non-opposition.

### 3. California Labor and Workforce Development Agency ("LWDA") Payment

The parties allocated $5,000 as a PAGA award, of which 75% ($3,750) will be paid to the LWDA with the balance remaining in the net settlement amount for distribution to the settlement class. (Id. V.B.)

### 4. Settlement Administration Costs

The settlement administrator, Simpluris, Inc., will be paid from the gross settlement amount for the cost of administering the Settlement Agreement. (Id. V.D.) The Settlement Agreement estimates the settlement administration costs will not exceed $10,000 (Id.) The proposed Notice reflects this amount as well. (Notice at 3.) The actual administration costs total $6,000. (MFA at 2; Butler Decl. ¶ 15.)

### 5. Attorneys' Fees and Costs

The Settlement Agreement permits Plaintiffs to seek an award of attorneys' fees not to exceed 33.33% of the gross settlement amount and costs not to exceed $12,000. (Settlement Agreement V.D.) Plaintiffs seek $60,000 in attorneys' fees and $8,609.42 in costs. (MFA at 2.) The Settlement Agreement provides that Defendant shall submit a statement of non-opposition to these requests. (Settlement Agreement V.D.) The Court has not yet received this statement, but at the April 15, 2019 hearing, Defendant expressed its non-opposition.

## C. Injunctive Relief

The Settlement Agreement does not appear to include any injunctive relief.

## D. Release

All settlement class members agree to release their claims as follows:

> As of the Final Effective Date, in exchange for the consideration set forth in this Settlement Agreement, Releasing Parties[4] will be deemed to have, and by operation of the Final Approval Order and Judgment, will have expressly waived and released the Released

---

[4] "Releasing Parties" refers to:

> Plaintiffs, on their own behalf and as Class Representatives, all Settlement Class Members, and all persons purporting to act on their behalf or purporting to assert a claim under or through any of them, including, but not limited to, their dependents, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, representative, legal, equitable, direct or indirect, or any other type or in any other capacity.

(Settlement Agreement I.BB.) The Settlement Agreement further defines "Settlement Class Member" as "all Class Members who do not submit a timely and valid Request for Exclusion as provided in the Settlement Agreement." (Id. I.GG (emphasis added).)

> Parties[5] of the Released Claims[6] (as defined above), to the fullest extent permitted by law.

(Settlement Agreement V.G.)

///
///
///

---

[5] "Released Parties" refers to:

> Defendant Remington Hospitality & Lodging, LLC. and any of its past, present and/or future, subsidiaries, parents, divisions, joint venturers, predecessors, successors, insurers, assigns, consultants, subcontractors, their employee benefit plans and the trustees, fiduciaries, and administrators of those plans, and any of their current or former employees, officers, directors, servants, agents, investors, representatives, attorneys, executors, administrators, and assigns, and all persons acting under, by, through, or in concert with any of them, and each of them.

(Settlement Agreement I.AA.)

[6] "Released Claims" refers to:

> [A]ll causes of action alleged or that could have been alleged in the Complaint based upon the facts alleged in the Complaint, arising during the Class Period, including all of the following claims for relief: (1) Failure to Pay for All Hours Worked (Labor Code §§ 201 202, 218.5); (2) Failure to Pay Overtime Compensation for All Overtime Hours Worked (Labor Code §§ 510 1194); (3) Failure to Provide Meal Periods (Labor Code §§ 226.7, 512); (4) Failure to Provide Accurate Wage Statements (Labor Code 226, 226.3); (5) Conversion (Civil Code § 3336); (6) Violations of Business and Professions Code § 17200 et seq.; and (7) Violations Pursuant to the Private Attorney General Act (Labor Code §§ 2698 et seq.).; and (8) all damages, penalties, interest and other amounts recoverable under California and federal law, to the extent permissible, including but not limited to the California Labor Code, the applicable Industrial Welfare Commission Wage Orders, and the California Unfair Competition Law (collectively, the "Released Claims"). Only those Settlement Class Members who cash their Individual Settlement Payment check shall be deemed to have opted-in to the release and settlement of Released Claims that arise under the Fair Labor Standards Act ("FLSA"). The res judicata effect of the contemplated judgment will be the same as that of the release of Released Claims.

(Settlement Agreement I.AA.)

**E.  Notice**

The Settlement Agreement proposes the following procedure to notify class members of the Settlement Agreement.  (See Settlement Agreement III.E.)  Within 14 days after a preliminary approval order, Defendant shall provide the settlement administrator with an updated list of class members, including their names, social security numbers, and last-known addresses.  (Id. III.E.1.)

Within 14 days following the receipt of the information above, the settlement administrator shall mail the Notice by first class U.S. Mail.  (Id. III.E.2.)  For Notices returned as undeliverable with a forwarding address, the settlement administrator will forward the Notice to the new address obtained.  (Id. III.E.3.)

The Notice included the following: (1) information about the lawsuit; (2) a summary of the Settlement Agreement; (3) the definition of the class; (4) procedures and deadlines for how to dispute the number of qualifying workweeks, how to object, and how to request exclusion; (5) references to sources from which class members can get information about the settlement agreement; (6) the date and time of a Final Approval Hearing; (7) the distribution formula; and (8) the estimated number of a particular class member's qualifying workweeks and their estimated settlement share.  (Id. III.E.7.)  The Court notes that the class member's estimated number of qualifying workweeks and estimated settlement share were at the bottom of the third page of the Notice and in the middle of a long, dense paragraph.  (See Notice at 3-4.)

To dispute the qualifying number of workweeks, a class member was required submit a written challenge to the settlement administrator with evidence supporting the number of workweeks she contends is correct.  (Id. IV.B.)  Written disputes must have contained (1) the case name and number; (2) the class member's full name, address, telephone number, and last four digits of her social security number; (3) the class member's signature; and (4) a clear statement that the class member wishes to dispute the number of workweeks credited to her with an explanation of the number of workweeks she contends is correct and supporting evidence.  (Id.)

Class members who did not timely request exclusion from the Settlement are deemed to participate in the Settlement and shall become a settlement class member without having to submit a claim form or take any other action.  (Id. V.E.)  A request for exclusion must have contained (1) the case name and number; (2) the class member's full name, address, telephone number, and last four digits of her social security number; (3) the class member's signature; and (4) a statement substantially similar to "I wish to be excluded from the class action settlement, and I understand that I will receive no money from the settlement because of my request to be excluded."  (Id. IV.C.)

The Notice also informed class members of their right to object to the Settlement.  (Id. III.E.7.)  A written objection must have contained (1) the case name and number; (2) the class member's full name, address, telephone number, and last four digits of her social security

number; (3) the class member's signature; (4) any and all supporting papers; (5) a statement indicating whether the objector has a legal representative and providing such legal representative's contact information; and (6) a statement indicating whether the objector intends to appear at the Final Approval Hearing.  (Id. IV.D.)

### F. Administration

The claim administrator received information for 87 class members.  (Butler Decl. ¶ 6.)  After mailing the packets as instructed in the Settlement Agreement, 12 were returned by the post office.  (Id. ¶¶ 7-9.)  The settlement administrator performed skip trace searches to update the addresses for these twelve class members and re-sent the packets.  (Id. ¶ 9.)  None of these packets were returned.  (Id.)  As of March 5, 2019, the settlement administrator had not received any objections, requests for exclusion, or disputes concerning number of qualifying workweeks.  (Id. ¶¶ 12-14.)

## III.   LEGAL STANDARD

### A. Class Action Settlement

Class action settlements must be approved by the Court.  See Fed. R. Civ. P. 23(e).  Whether to approve a class action settlement is "committed to the sound discretion of the trial judge."  Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  A strong judicial policy favors settlement of class actions.  See id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement.  See id.  "The settlement must stand or fall in its entirety."  Id.

In order to approve the class action settlement herein, the Court must conduct a three-step inquiry.  See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).  First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act ("CAFA").  Id.  Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied.  Id.  Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3).  Id.

### B. Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2).  While the rule specifies requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees.  "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[ ] effect to the 'American Rule' that each party must bear its own

attorneys' fees in the absence of a rule, statute or contract authorizing such an award." MRO Commc'ns, Inc. v. AT&T, 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees. See Alba Conte and Herbert B. Newberg, Newberg on Class Actions, § 14.1 (4th ed. 2005) ("Two significant exceptions [to the "American Rule"] are statutory fee-shifting provisions and the equitable common-fund doctrine"). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

### IV.   RULE 23 REQUIREMENTS

**A.  Class Action Fairness Act ("CAFA")**

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b).

The statute provides detailed requirements for the contents of such a notice. Id. A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

Here, Linda Claxton, attorney for Defendant, declares under penalty of perjury that Defense counsel served CAFA notice on the Office of the United States Attorney General and the Office of the California Attorney General on December 7, 2018. ("Claxton Declaration," Dkt. No. 41 ¶¶ 2-3.) Accordingly, the notice requirements of 28 U.S.C. § 1715 have been satisfied.

### B. Rule 23(a) and (b)

In its Preliminary Approval Order, the Court certified the Class in this matter under Rules 23(a) and 23(b)(3). (Preliminary Approval Order at 3-6.) Accordingly, the Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, No. C-08-5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, Nos. CV 04-2147-PHX-JAT, CV 04-2204-PHX-JAT, CV 04-2334-PHX-JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012). Here, the Class has not changed since it was conditionally certified. All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Class.

### C. Rule 23(c)(2)

Rule 23(c)(2)(B) requires the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its Preliminary Approval Order, the Court approved the notice sent to class members. (Preliminary Approval Order at 16.) The claims administrator timely mailed the Notice Packet. (Butler Declaration ¶¶ 8.) The Court therefore finds that notice to the Class was adequate.

### D. Rule 23(e)

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court held a final approval hearing on April 15, 2019. In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed, and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exclusive, and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1. Strength of Plaintiff's Case

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir. 2009). In determining the probability of Plaintiffs' success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965.

Here, Plaintiffs acknowledge the weaknesses in their claims. (MFA at 7-8.) Specifically, Plaintiffs recognize Defendant's strong defenses to the unpaid overtime and off-the-clock hours claims. (Id. at 7.) Plaintiffs represent that during discovery they learned information that would either not support litigating these claims on a class wide basis or risk only de minimis recovery. (Id.; Johnston Decl. ¶ 5.) Accordingly, Plaintiffs' primary claims are the meal and rest break claims. (MFA at 8.) However, for the meal break claim, Defendant contends many employees working the allegedly offending shifts signed valid meal break waivers. (Id. at 7.) Finally, parties strongly contest whether Augustus v. ABM Security Services, Inc., 5 Cal. 5th 257 (2016), prohibits employers from requiring employees to remain on premises during rest breaks. (Id.)

Given the challenges Plaintiffs face in continued litigation over such issues, the Court finds this factor weighs in favor of approval. See Barbosa v. Cargill Meat Solutions Corp., 1:11-CV-00275-SKO, 2013 WL 3340939, at *12 (E.D. Cal. July 2, 2013) ("Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount.")

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

Here, without settlement, the parties would continue litigating the class certification issue as well as the ultimate merits of the case – a long, complex, and expensive process. Therefore, the settlement avoids further protracted and expensive litigation. Accordingly, the Court finds this factor weights in favor of settlement approval.

### 3. Risk of Maintaining Class Action Status Throughout the Trial

Under Rule 23, a court may revisit its prior grant of certification prior to final judgment. Fed. R. Civ. P. 23(c)(1)(C) ("An order under that grants or denies class certification may be altered or amended before final judgment"). Here, the Court has only conditionally certified the Class. Plaintiffs note Defendant raises a predominance defense to certification by arguing that determining whether an employee was denied rest breaks requires individualized proof. (MFA at 8.) Thus, on balance, this factor favors approval. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (explaining that circumstances could arise justifying decertification and thus the factor weighed in favor of approving the settlement).

### 4. Amount Offered in Settlement

The amount offered in the Settlement Agreement weighs in favor of final approval. Plaintiffs calculate that if they prevailed on his class-wide claims, the maximum damages available to class members would be approximately $921,661. (MFA 5; Johnston Decl. ¶¶ 7-9.) However, Plaintiffs explain that this number is quite unrealistic for two reasons: (1) it assumes the Court would award PAGA fees on top of statutory fees and damages; and (2) courts traditionally award very small percentages of requested PAGA penalties. (MFA at 5-6.) The gross settlement amount, $180,000, offers the Class approximately 19.5% of their inflated maximum potential damages recovery. Given the potential defenses Defendant could put forward, including an argument against class certification, the Court finds the settlement amount realistic and reasonable.

### 5. Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239.

Plaintiffs assert the parties engaged in significant written discovery, including multiple rounds of interrogatories and requests for production of documents. (MFA at 9; Johnston Decl. ¶¶ 2-4; Hoddick Decl. ¶ 6.) The parties also conducted extensive investigation and interviews with putative class members. (MFA at 9; Johnston Decl. ¶ 3.) And Defendant provided Plaintiffs with timekeeping records for putative class members. (MFA at 9; Johnston Decl. ¶ 6.) In July 2018, the parties participated in a full-day mediation session with Steven Serratore, a well-known employment law mediator with substantial experience mediating wage and hour class action cases. (Johnston Decl. ¶ 11; Hoddick Decl. ¶¶ 6-8.) In advance of the mediation session, the parties prepared and exchanged lengthy mediation statements and damages analyses. (Hoddick Decl. ¶ 6.) Plaintiffs assert this process allowed the parties to evaluate the merits of

their claims and the asserted defenses. (MFA at 9.) They further assert the proposed settlement is the result of informed parties negotiating at arm's-length. (Id.) Accordingly, the Court finds the parties have developed a clear idea of the strengths and weaknesses of their respective cases. See Lewis v. Starbucks Corp., No. 2:07-cv-00490-MCE, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases."). This factor favors final approval.

### 6. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).

Class counsel have experience serving as counsel in California wage-and-hour class actions. (Johnston Decl. ¶¶ 16-17; Hoddick Decl. ¶¶ 2-3.) Counsel further submits that the Settlement is fair and in the best interests of the class. (MFA at 10; Johnston Decl. ¶ 12; Hoddick Decl. ¶ 5.) As a result, the experience and views of class counsel also weigh in favor of final approval.

### 7. Presence of a Government Participant

No governmental entity is present in this litigation. Therefore, this factor favors approval.

### 8. Opposition by Class Members

No class member has requested exclusion from or objected to the Settlement. (See Butler Decl. ¶¶ 12-13.) This factor favors approval.

### E. Attorneys' Fees and Costs

#### 1. Fees

Plaintiffs also seek approval of their request for attorneys' fees. (See MAF.) Courts are obliged to ensure the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on the amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011.) "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-

recovery method." In re Bluetooth, 654 F.3d at 942. "[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." In re Bluetooth, 654 F.3d at 942 (quoting Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).

A court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). The court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Next, the court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).[7] Under the percentage-of-the-fund method, an award of twenty-five percent of the gross settlement amount is the "benchmark" for attorneys' fees calculations. Powers v. Eichen, 229 F.3d 1249, 1256-57 (9th Cir. 2000).

To determine whether the percentage requested is reasonable, courts may examine several factors, including:

> [T]he extent to which class counsel achieved the results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burden class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotation mark omitted). The Ninth Circuit has allowed courts to award attorney's fees using

---

[7] In Kerr, the Ninth Circuit adopted the 12–factor test articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), which identified the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Kerr, 526 F.2d at 70.

the percentage method "in lieu of the often more time-consuming task of calculating the lodestar." Bluetooth, 654 F.3d at 942.

Here, Plaintiffs seek 33.33% ($60,000) of the common fund ($180,000). (MAF at 1, 3; Settlement Agreement V.D.) The Court considered the results achieved and the risk of litigation (e.g., the number and quality of defenses), as well as the skill required and work performed to litigate this case. Class counsel obtained a settlement that confers a significant benefit to the Class, particularly in light of the risks and potential expenses involved in this litigation. The net settlement available to the class totals $91,640.58, or an average settlement share of approximately $1,053.34 per class member. Furthermore, the Class was informed via the Notice that class counsel would seek $60,000 (33.33%) in fees, and no class members objected or requested exclusion. (Butler Decl. ¶¶ 12-13.) In addition, the Court took into account the contingent nature of the fee and financial burden on counsel as well as awards made in similar cases. These factors, the Court finds, justify an award of 33.33% or $60,000 in attorneys' fees.

The Court now turns to the lodestar method as a means of cross-checking the 33.33% award requested. Counsel's work on the case, at this time, amounts to $120,073.33 and a total of approximately 182.81 attorney hours. (MAF at 5; Johnston Decl. ¶ 21; Johnston Fees; Hoddick Decl. ¶ 21; Hoddick Fees.) Counsel represents they will have to spend additional time in completing the settlement approval process and settlement administration, time which has not been included in this lodestar calculation. (MAF at 6.) Thus, the requested fee ($60,000) represents a lodestar multiplier even less than 1.0. In Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050-51 (9th Cir. 2002), the Ninth Circuit held the district court did not abuse its discretion when it approved attorney's fees after applying the lodestar method as a cross-check of the percentage method. The attorney's fees resulted in a of 3.65 lodestar multiplier in Vizcaino, which the Ninth Circuit upheld as "appropriate." Id. at 1051. The multiplier here is much smaller, and counsel will not recover their total lodestar fees.

Here, Plaintiffs' counsel James Johnston billed his usual hourly rate of $750, and Larry Hoddick billed his usual hourly rate of $550. (Johnston Decl. ¶¶ 20-21; Hoddick Decl. ¶ 21.) Both Johnston and Hoddick exercised billing judgment, deducting from their total hours time deemed to be redundant, excessive, or non-essential. (Johnston Decl. ¶ 22; Hoddick Decl. ¶ 20.) They also removed all hours spent on clerical work, such as copying, file management, communications with class members, mailing, and other tasks that were (or could have been) performed by legal assistants. (Johnston Decl. ¶ 22; Hoddick Decl. ¶ 20.)

The Court reviewed the experience of the respective attorneys and finds the amount billed per hour to be reasonable. See Youngevity Int'l, Corp. v. Smith, No. 16-CV-00704-BTM-JLB, 2018 WL 2113238, at *5 (S.D. Cal. May 7, 2018) (citations omitted) ("Courts in this district have held a range of rates from $450-750 per hour reasonable for a senior partner in a variety of litigation contexts and specialties.") James Johnston has been practicing law since 1986 and has been handling employment matters for most of his career. (Johnston Decl. ¶ 16.) For the past 22 years, his practice has focused almost exclusively on representing employees in employment matters. (Id. ¶ 17.) He has been lead attorney in wage and hour class actions in Los Angeles, San

Diego, and Riverside Counties.  (Id. ¶ 18.)  Larry Hoddick has been practicing law since 2005, litigating employment, personal injury, and consumer cases on behalf of plaintiffs.  (Hoddick Decl. ¶ 2.)  He began his employment practice in 2008, and more than 50% of his practice is dedicated to representing employees in labor disputes.  (Id.)  He has litigated many wage and hour claims and has served as lead or co-lead counsel in other employment class actions.  (Id. ¶¶ 2-3.)

Considering the complexity of the case, the risks involved, and the potential length of litigation, the Court finds this multiplier (.5) to be appropriate.  Johnston and Hoddick, with the written consent of Corona and Villela, have agreed to split their award equally.  (MAF at 6; Corona Attorneys' Fees Consent; Villela Attorneys' Fees Consent.)  Accordingly, the Court APPROVES the requested $60,000 in attorneys' fees and ORDERS the fee to be divided evenly between Johnston and Hoddick.

### 2. Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."  Rutti v. Lojack Corp., Inc., No. SACV 06–350 DOC (JCx), 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Class counsel requests $8,609.42 in costs.  (MAF at 7.)  These costs total $3,390.58 less than the maximum $12,000 authorized under the Settlement Agreement.  (Settlement Agreement V.D.)  An itemized breakdown of the expenses in this case include mediation fees, filing and delivery fees, travel costs, and copying.  (Johnston Costs; Hoddick Costs.)  All of these expenses are typically recoverable in litigation.  Cf. In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a class action settlement).  The Court therefore APPROVES the requested amount for costs.

## F. Incentive Awards

The trial court has discretion to award incentives to the class representatives.  See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz, 592 F. Supp. 2d at 1329. The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative.  Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiffs each seek a $5,000 incentive award for their service to the Class. (MFA at 7-9.) Corona assisted class counsel in investigating, identifying witnesses and locations, locating evidence, producing documents, analyzing payroll and timekeeping records, answering questions, reviewing discovery requests, and participating in the mediation. (Hoddick Decl. ¶ 10; Corona Decl. ¶ 2-5.) Corona spent at least 30 hours assisting in this action. (Hoddick Decl. ¶ 10; Corona Decl. ¶ 7.) Villela assisted class counsel in analyzing and identifying violations related to banquet servers, answering questions, and participating in the mediation. (Hoddick Decl. ¶ 11; Villela Decl. ¶¶ 2-5.) Villela spent at least 15 hours assisting in this action. (Hoddick Decl. ¶ 11; Villela Decl. ¶ 8.) Both Corona and Villela "took on the risk of being blackballed by other potential employers due to being part of this case." (Corona Decl. ¶ 6; Villela Decl. ¶ 7.) Given Plaintiffs' involvement and assumption of significant risk, the Court AWARDS $5,000 each to Plaintiffs Jesus Corona and Horacio Villela.

## V.   CONCLUSION

For the reasons stated above, the Court:

1. GRANTS final approval of the Settlement Agreement;

2. AWARDS Class Counsel attorneys' fees in the amount of $60,000 in equal shares;

3. AWARDS Class Counsel costs in the amount of $8,609.42;

4. AWARDS $5,000 each to Plaintiffs Jesus Corona and Horacio Villela;

5. ORDERS the payment of $3,750 to the California Labor and Workforce Development Agency;

6. ORDERS the payment of $6,000 to the claims administrator; and

7. DISMISSES the Complaint WITH PREJUDICE.

The Court ORDERS such judgment be entered.


**IT IS SO ORDERED.**